# Code of Business Conduct and Ethics



West Publishing Corporation v. Voicepresent LLC
Dockets.Justia.com

EXHIBIT
A

THOMSON

# Protecting Company Assets and Resources

## Thomson assets are to be used for your job and should be protected.

Company assets are highly valuable and are meant for business use. We all have a responsibility to protect and safeguard company assets from loss, theft, misuse, damage and waste in order to preserve their value.

**Examples of company assets** – Company assets include, but are not limited to:

- Office supplies,
- Computer systems, equipment and technology,
- Phones, copiers, scanners and fax machines,
- Books,
- Business plans,
- Intellectual property, such as software codes, licenses, ideas, concepts, content and inventions,
- Customer, supplier and distributor lists and information, including customer search or trading information,
- Buildings and other physical property, and
- The Thomson name, our various brand names and logos.

Company assets also include all memos, notes, lists, records and other documents (whether in paper or electronic format) that you make or compile relating to the company's business.

**Proper use of assets** – You should use company assets appropriately for legitimate and authorized business purposes. Company assets should never be used for illegal activities. Our company does allow and permit limited and occasional personal use of company e-mail, the Internet and phones if use is not excessive, does not interfere with work responsibilities or otherwise does not violate the Code.

Misappropriation of company assets is a breach of your duty to the company and may be an act of fraud against the company. Taking company property from our facilities without permission is regarded as theft. In addition, carelessness or waste of company assets may also be a breach of your duty to the company. If you become aware of loss, theft, misuse, damage or waste of our assets or have any questions about your proper use of them, you should speak with your manager or your Human Resources department.

**Returning assets** – If you leave the company, or upon the company's request, you must return any and all company assets in your possession to Thomson.

Q. We have a closet full of office supplies that contains things like computer paper, pens and notepads. Can I take some home with me? I can't imagine anyone would miss what I need, which isn't that much!

A. Unless you are taking office supplies so you can work from home and your manager has approved it, this is not permitted. Taking home company property, such as office supplies, can result in significant costs for the company.

# Confidential Information

## Protect the confidentiality of nonpublic information about Thomson.

As part of your job or position, you may learn or have access to confidential or nonpublic information relating to Thomson businesses, operations or technology. You should not share confidential information with anyone, including individuals within Thomson, unless there is a legitimate "need-to-know" and you are authorized to do so. Improper disclosure of confidential information could put us at a competitive disadvantage or could hurt or embarrass the company or other employees.

**Examples of confidential information** – Confidential information includes some of our most valuable assets, such as the following examples:

- Trade secrets,
- Pricing policies and information,
- Business or strategic operating plans and outlooks,
- Nonpublic financial information about Thomson or our customers,
- New product and brand developments, plans or forecasts,
- Customer lists, specifications and preferences,
- Contracts and agreements,
- Subscription lists,
- Employee lists with contact information,
- Software or computer programs,
- Merger, acquisition or divestiture plans, and
- Personnel plans or major management changes.

**Safeguarding confidential information** – If you have confidential information, you should store or safeguard it where unauthorized people cannot see or access it. You should not discuss confidential information in elevators, restaurants, airplanes or other places where your conversation may be overheard. Also use care when speaking in front of family members, who may not know that you are discussing confidential information and may later inadvertently disclose it to others. You should also be careful not to leave confidential information in unattended conference rooms, or discard confidential information in a public place where others can retrieve it. In addition, use good judgment when using cell phones, laptops, wireless devices and any forms of unsecured communications.

Your obligation to safeguard the company's nonpublic information or other confidential information applies to you even after you leave the company for as long as the information remains confidential and is not generally available to the public.

You should only disclose confidential information after appropriate steps have been taken, such as obtaining written authorization to do so and signing a confidentiality agreement or non-disclosure agreement (NDA) to prevent misuse of the information.

**Q.** Does this policy restrict me from mentioning Thomson in a personal blog?

**A.** It's OK to mention Thomson in a personal blog. However, if you maintain a personal blog, it should not contain or discuss any confidential or nonpublic information about Thomson, our customers or other people or companies that we do business with. You should not cite or reference customers or business associates without their approval. If your blog mentions Thomson, it should be clear that any opinions that you express are your own, and not those of Thomson. Further, personal blogs should never be used for internal communications among fellow employees and you should not use a personal blog to air any differences with co-workers, Thomson or people or companies that we do business with.

**Q.** If I use a laptop, what can I do to help prevent against the risk of data or information thefts?

**A.** Some recommendations include: (1) don't let your laptop out of sight in a public location; (2) don't check your laptop with your baggage when traveling by air; (3) keep an eye out when going through airport security screening – thieves working in pairs are experienced at distracting people with laptops; (4) if you take a laptop with you, a non-descript bag will draw less attention than a traditional laptop bag; (5) if you need to put your laptop down, try to put it in front of you, and not behind you or to your side; (6) if you need to leave your laptop in your car, lock it in the trunk; (7) when traveling with highly sensitive information, consider using a removable hard drive and packing it separately; (8) lock up your laptop whenever possible; (9) routinely back up your laptop to the network; and (10) if you store highly sensitive personal information about Thomson employees or customers on your laptop, such as social security numbers or credit card numbers, you should make sure that this information is encrypted. If you lose or misplace a laptop, report it immediately to your local IT or Security department.




**Sales Ethics**

EXHIBIT B

# Joining or Leaving Thomson





When in doubt, **ask**, or **don't disclose**,...

...seek guidance from a Thomson attorney.

Now let's discuss confidentiality concerns related to joining or leaving Thomson. Here are some basic pointers to remember:
• You shouldn't ask or encourage co-workers who previously worked for a competitor (or current employees of a competitor interviewing for a position at Thomson) to divulge confidential or proprietary information about the competitor, such as pricing and future plans which may have been considered confidential or proprietary by a competitor.
• Similarly, if you previously worked for a competitor, you shouldn't disclose information about your former employer that you believe is confidential or proprietary, or bring any of this information into Thomson offices. However, you can discuss items of a general nature with a co-worker who previously worked for a competitor (or a current employee who is interviewing at Thomson), including anything that's a matter of public record or that wasn't treated by the employer as confidential.

# Confidential Business Information

**Here are some examples of confidential business information:**
- Customer lists, specifications and preferences
- Pricing information and policies
- Business proposals
- Product/service plans and forecasts
- Software and electronic services or programs
- Contracts and agreements with customers
- Employee lists and information

If you're planning on leaving Thomson for another company, or looking to start your own business venture, don't take Thomson information with you. Here are some examples of confidential business information These are just examples of confidential information, and this is not intended to be a comprehensive list.



February 26, 2008

David Vogelgesang
4007 Fairway Drive
Medina, OH 44256

Dear David,

Attached is the information I referenced during our phone call this afternoon. Please review this and call me if you have any questions.

Thank you.

Sincerely,

Ann Ross
Ann Ross
Director, Human Resources

**EXHIBIT**

C

# TERMINATION OF EMPLOYMENT INFORMATION

The questions most often asked by terminating employees concern the disposition of benefits under various employee benefit programs and the final accounting of monies owed to or owed by the employees. The information contained here will provide answers on most of these subjects, or identify a contact where the answer can be obtained. These contacts are listed on the last page. IMPORTANT: KEEP THE COMPANY INFORMED OF CURRENT MAILING ADDRESS TO ENSURE PROMPT DELIVERY OF CHECKS, W-2 FORMS, AND OTHER INFORMATION.

I. **PAYCHECKS**
   FINAL CHECK - Any compensation due a terminated employee, including payment of unused vacation, will be paid as required by state or local law. Compensation will be subject to deductions for any money owed by the employee to the company, e.g. travel or cash advances, reimbursements, or overpayments, consistent with state and local law. Your final paycheck after your termination will include payment for any vacation due you and for all hours worked through the effective date of your termination. If you are currently participating in direct deposit, your final check will be direct deposited. If you are not currently participating in direct deposit, you will receive a live check by mail. After you have received all monies due, your direct deposit will cease. Your check stubs will be mailed to you.

II. **FINAL PAY**
   FIELD SALES EMPLOYEES - For any employee who leaves the company, commissions will continue to apply adjustments, returns, chargebacks and credits through the sales month following the employees last day in the position. Please note this exception: Employees whose last day of employment is within the first four calendar days of the month will continue to have applied adjustments, returns, chargebacks and credits by Commissions through the sales month of the employees last day in the position. If eligible, payment will be dispersed with the next scheduled settlement after the reconciliation period has ended, except as required by state law. The value of any West computer hardware that is not returned and received by the company will be deducted from the employee's final settlement. Employees are also liable for any red balances as a result of draws that the employee received that have not been offset by commission/bonuses earned by the employee.

III. **401K PLAN**
   A. **General**
      If you are a Thomson 401(k) Savings Plan participant, you have the following options regarding your 401(k) account. If your current vested balance is greater than $5,000, you can leave your account in the Plan as long as you would like. You have the option to take your money out of the Plan at any time. If your vested balance is $5,000 or less, you are required to remove your account from the Plan. In either case, distributions may be taken in the form of a cash distribution, a direct rollover to an IRA or new 401(k) account, or a combination partial cash distribution and direct rollover. Note: If you do not request a proactive distribution election within the notice period and your vested account balance is between $1,000 and less than $5,000, Mercer HR Services will automatically roll your account balance to a Putnam IRA into a Money Market Fund. If your account balance is less than $1,000, Mercer will distribute your vested account balance as cash.

      For more information or to obtain the necessary forms for either type of distribution, please call Mercer Investments at 1-800-457-1670.

   B. **401(k) Outstanding Loan Balance**
      All outstanding 401(k) loans must be paid in full upon termination of employment. Unpaid loan balances will be treated as cash distributions. For more information on paying off an outstanding loan, contact Mercer Investments at 1-800-457-1670.

IV. **PENSION**

   A. **West Publishing Company pension plan formula**
      Your earnings and years of service determine your pension benefits. You are fully vested in your pension plan benefits when you complete five years of vesting service. You can retire with full plan benefits at age 65 or at age 55 or older with at least 35 years of service. Reduced plan benefits are available at age 55 with 20 years of service or age 60 with 10 years service. If you have a vested pension benefit but are not yet eligible for a distribution, you will receive notification, in writing, confirming your vested status, along with the actuarial benefit computation. Prior to receiving plan benefits, you will receive detailed information on the normal and optional payment methods. Please contact the Thomson HR Service Center at 1-866-443-6947 for additional information.

   B. **Thomson Holdings, Inc. pension plan formula**
      Your earnings and years of service determine your pension benefits. You are fully vested in your pension plan benefits when you complete five years of vesting service. You can retire with full plan benefits at age 65 with 5 years of service. Reduced plan benefits are available if you reach age 55 and have completed 10 years of Vesting Service. If you have a vested pension benefit but are not yet eligible for a distribution, you will receive notification, in writing, confirming your vested status, along with the actuarial benefit computation. Prior to receiving plan benefits, you will receive detailed information on the normal and optional payment methods. Please contact the Thomson HR Service Center at 1-866-443-6947 for additional information.

V. **INSURANCE BENEFITS**
   GENERAL - If you terminate voluntarily or involuntarily, you or your covered dependents are entitled to continuation of your medical, dental, vision, and health care flexible spending account at your own expense. Participation in all other employee benefits programs will cease on the effective date of termination. If you reside and work in Minnesota, State Law requires continuation of life insurance to be offered as well.

   A. **Medical Plan**
      Your group coverage expires at the end of the month in which you are terminated. After your termination, you will receive a package from Your Benefits Resources explaining how to continue your coverage through COBRA. You or your covered dependents may

continue your medical plan coverage for up to 18 months after the termination of your group coverage. The cost is 102% of the full premiums for the plan (Company and employee portion). You will receive a COBRA notification that will have the exact rates for each benefit you are entitled to continue when mailed after termination.

B. **Dental & Vision Plan**
This coverage remains in effect through the month in which your employment terminates, however, you may continue this coverage through COBRA for up to 18 months.

C. **Life Insurance & Dependent Life Insurance**
These coverages will cease on the day of termination. Minnesota residents may continue these coverages for up to 18 months as required by law. However, first they should review portability options, which may be more advantageous. You may contact UNUM at 1-800-343-5406 to discuss conversion and portability options.

D. **Flexible Spending Account Reimbursement**
Reimbursement contributions will cease as of your last day worked, although you may elect to continue your health care reimbursement program under COBRA. Claims may be submitted for service received prior to your termination date for dependent care or medical expenses until March 31 following the calendar year of your termination date.

E. **AD&D**
This coverage will cease on the day of termination. No conversion privilege is available.

F. **Short-Term Disability**
This coverage will cease on the day of termination.

G. **Long-Term Disability**
This coverage will cease on the day of termination.

H. **Group Legal**
This coverage remains in effect through the month in which your employment terminates. You may call ARAG at 1-800-247-4184 if you would like to convert to an individual policy.

I. **Long Term Care**
You or your covered dependents may continue Long Term Care coverage insured by John Hancock Mutual Life Insurance Company. The same group rates you have paid as an active employee would apply when you terminate. To continue coverage, simply continue paying the monthly premium mailed to your home. If you would like to discontinue coverage or if you have questions about coverage, please contact John Hancock directly at 1-866-531-8206.

VIII. **SIGN-ON BONUS**
If you voluntarily leave the company or are terminated for cause within twelve months of your hire date, the bonus will be payable back to the company.

IX. **RELOCATION ASSISTANCE**
If you should voluntarily leave the company or are terminated for cause within twelve months of your hire or effective date in your new position, all or a portion of the actual relocation expenses will be payable back to the company, prorated based on length of employment. Please refer to the Relocation Policy for details.

X. **CORPORATE PROPERTY**
You must return all corporate property before leaving the company. This includes, but is not limited to, keys, credit cards, ID badges, equipment, corporate records, advances, files and the like.

Any written or electronic files made or compiled by you or made available to you concerning Thomson West business must also be returned promptly upon your termination.

Please arrange for any computer equipment and any other company property still in your possession to be returned to Thomson immediately. Please follow the below directions.

Call Fed EX to request a pick up.
1-800-GOFEDEX (4633339)
Fill out a return label with our Fed Ex number and bill the recipient.
Ship via Federal Express Account # 2009-4580-8 to:

Thomson West
Attn: Michele Irving
D1 - N144
610 Opperman Drive
Eagan, MN 55123
1-800-555-9527

Note: please do not purchase additional insurance

Equipment Check list:
Computer Shell with Hard Drive
CD-RW/DVD drive
Battery
AC power supply
Port computer bag
SecurID card
Sprint Broadband card (if applicable)
Blackberry (if applicable)

Any extra parts that might be held:
Car Adapter
Port Replicator
Extra AC Power Adaptor for a port replicator

XI. **AMERICAN EXPRESS CORPORATE CARD**
Any balance due on your Corporate Credit card is your responsibility. Your card becomes void when you terminate.

XII. **W-2 FORM**
Your W-2 Form will be mailed to you after the end of the calendar year in which you terminate. Such forms will be mailed to your last address shown on Company records.

XIII. **UNEMPLOYMENT COMPENSATION**
Claims for unemployment compensation may be filed with the Employment Security Department office nearest your residence. Consult your local telephone directory

XIV. **TUITION REIMBURSEMENT**
If you have received tuition reimbursement within 12 months of termination, and the termination was voluntary or for cause, you are responsible for repayment of the reimbursement received. Repayment should be for the full amount of reimbursement received within the past 12 months, and must be received within 15 days of termination. For information on courses reimbursed, please contact Thomson University at 651-687-4066.

**CONTACTS**
Your Benefits Resources / Thomson Human Resource
Services Center 1-866-443-MyHR (1-866-443-6947)
- Medical
- Dental
- Vision
- COBRA
- Life Insurance
  - UNUM (1-800-343-5406)
  - Minnesota residents (1-877-246-4233)
- Long Term Disability
- Group Legal

Aetna (1888-238-6226)
- Flexible Spending Accounts

Hartford (1-800-303-9744)
- Short-Term Disability

Mercer (1-800-457-1670)
- Thomson 401(k) Savings Plan.

Prudential Financial / Merastar (1-800-637-2782)
- Homeowners & Automotive Insurance

Thomson West
610 Opperman Drive
Eagan, MN 55123
651-687-7000

The information contained in this Termination of
Employment information form was carefully reviewed for
errors or omissions. However, termination benefits are not
determined by this form but only the provisions of the
policies, procedures, or legal documents, which govern each
plan. Since changes may take place between updates,
differences may occur between this information sheet and
governing documents. Differences may also occur where
specific state law so requires. Inquiries should be referred
to the Thomson Human Resource Services Center.

# Termination of Employment Information – David Vogelgesang

- Your employment is terminated effective immediately.
- You will be paid through Tuesday, February 26, 2008.
- We will need your laptop, blackberry and any other company property. Please ship this to STS immediately.
- You will also receive 2/3 of your earned first quarter bonus based on your attainment level through the end of February.
- You have two options regarding your final paycheck. We can have a live check cut today and sent to your home address or you can have it direct deposited on March 7. Based on your request during our conversation this afternoon, your final check will be direct deposited according to the regular payroll schedule.
- Your unused accrued vacation will be paid out in your last paycheck.
- If you have any outstanding expenses that haven't been submitted, please forward these to Debbie Wehrs for processing.
- Your benefits will end on February 29. We will pay for one month of health and dental benefit coverage through COBRA. If you choose to do this, please call the HR service center tomorrow and ask them to send you the paperwork.
- You will receive information regarding benefits and 401(k) in approximately 2 weeks from the HR service center.
- You can call the HR service center immediately if you have questions about COBRA, other benefits, flexible spending accounts, etc... The phone number for the HR service center at 866-443-6947.
- Please see attached sheet with more details on benefits and contact information.
- If you have any questions following this meeting, please call Ann Ross at 651-687-1783

**Allen, Tim**

From: Ship_Email_OSI
Sent: Wednesday, February 27, 2008 1:05 AM
To: Allen, Tim
Subject: Shipment Confirmation

Pieces Shipped: 1
Shipped To: David Vogelgesang
Total Shipping Charges: $6.90

| Pkg ID | OSI # | Sender Def. ID | Shipped Via | Shipping $ | Tracking # |
|---|---|---|---|---|---|
| 1 | I466135 | n/a | UPS Next Day | $6.90 | 1Z73W5A20101730359 |

EXHIBIT D

4/17/2008



☒Close Window

# Tracking Summary

**Tracking Numbers**

| | |
|---|---|
| Tracking Number: | 1Z 73W 5A2 01 0173 035 9 |
| Type: | Package |
| Status: | Delivered |
| Delivered On: | 02/27/2008 10:12 A.M. |
| Delivered To: | MEDINA, OH, US |
| Service: | NEXT DAY AIR |

Tracking results provided by UPS: 04/17/2008 12:21 P.M. ET

NOTICE: UPS authorizes you to use UPS tracking systems solely to track shipments tendered by or for you to UPS for delivery and for no other purpose. Any other use of UPS tracking systems and information is strictly prohibited.

☒Close Window

Copyright © 1994-2008 United Parcel Service of America, Inc. All rights reserved.



EXHIBIT
E

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW

150 N. MICHIGAN AVENUE
35TH FLOOR
CHICAGO, IL 60601-7553
312.499.1400
FAX: 312.845.1998
EBGLAW.COM

PETER A. STEINMEYER
312.499.1417
FACSIMILE: 312.827.9517
PSTEINMEYER@EBGLAW.COM

April 17, 2008

VIA U.S. MAIL AND
FACSIMILE (312.419.6770)

Darlene A. Vorachek, Esq.
Abrahamson Vorachek & Levinson
120 North LaSalle St., Suite 1050
Chicago, Illinois 60602-2490

Re: David Vogelgesang

Dear Ms. Vorachek:

I am reviewing the issues raised in your letter of April 7, 2008 and will have a substantive response shortly.

In the interim, however, I have learned of very serious on-going misconduct by Mr. Vogelgesang. Specifically, I have been advised that Mr. Vogelgesang is contacting current Thomson customers by phone and e-mail and advising them as follows: he knows that their accounts are up for renewal; Thomson sales representatives are "ripping them off" by not providing all of the discounting that the customer could be receiving; he knows what the customer is being charged; and if the customer hires him, he can save it money on products and services from Thomson. After receiving such a communication from Mr. Vogelgesang, at least one Thomson customer has already cancelled an order with Thomson to upgrade its website.

Although our investigation of this misconduct is on-going, we have already confirmed such communications by Mr. Vogelgesang to a multitude of current Thomson customers, including but not limited to, the Cleveland Bar Association, Feiwell & Hannoy P.C., Spieth Bell McCurdy & Newell, and Slater & Zurz.

Such communications by Mr. Vogelgesang confirm that he has misappropriated trade secrets of Thomson and that such misappropriation is on-going. Furthermore, he is also tortiously interfering with Thomson's actual and prospective contractual relationships, engaging in corporate defamation, and violating Thomson's Confidential Information policy (which

ATLANTA • CHICAGO • DALLAS • HOUSTON • LOS ANGELES • MIAMI
CH:219463v1 NEWARK • NEW YORK • SAN FRANCISCO • STAMFORD • WASHINGTON, D.C.

EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY

**EXHIBIT F**

obligates him to safeguard the company's confidential information "for as long as the information remains confidential and is not generally available to the public.")

Furthermore, despite the directive in Thomson's Code of Business Conduct and Ethics that every employee "must return any and all company assets" on termination and despite the specific verbal directive given to Mr. Vogelgesang during his termination meeting (and follow-up written instructions mailed to him on February 26, 2008 (duplicate copy enclosed, along with proof of delivery)), Mr. Vogelgesang still has not returned his Thomson-issued laptop, blackberry or any other company property.

Accordingly, Mr. Vogelgesang is hereby directed to return to Sara Birmingham, Sr. Director, Human Resources, Thomson West - D5-N219, 610 Opperman Drive, Eagan, MN 55123, *no later than 5:00 p.m. on Monday, April 21, 2008*, any and all Thomson property in his possession or under his control, including but not limited to his laptop, blackberry, and any and all trade secrets or confidential information, in whatever form (*e.g.*, paper or electronic). He is further directed to immediately cease and desist from using or disseminating any Thomson trade secrets or confidential information.

Mr. Vogelgesang is hereby directed to provide a sworn affidavit, *no later than 5:00 p.m. on Monday, April 21, 2008*, (a) identifying all Thomson trade secrets or confidential information that have been in his possession at any time since his termination on February 26, 2008; (b) identifying all Thomson trade secrets or confidential information that are presently in his possession, including a description of all media containing such trade secrets or confidential information; (c) identifying all persons or organizations to which he directly or indirectly provided or offered to provide any Thomson trade secrets or confidential information; and (d) identifying every direct or indirect usage by him of Thomson trade secrets or confidential information since his termination on February 26, 2008.

Finally, Mr. Vogelgesang is hereby given notice not to destroy, conceal or alter any paper and/or electronic files, including "deleted" files and file fragments, and/or other data generated by and/or stored on any computers and/or storage media (*e.g.*, his Thomson-issued laptop and blackberry, hard disks, floppy disks, or backup tapes), or any other electronic data, such as voice mail, that in any way relates to the subject matter of this letter and/or the letter from Darlene A. Vorachek to Deirdre Stanley dated April 7, 2008.

Very truly yours,

Peter A. Steinmeyer

Encl.

CH:219463v1

# Abrahamson Vorachek & Levinson
## Attorneys at Law

120 North LaSalle Street
Suite 1050
Chicago, Illinois 60602-2490

VICKI LAFER ABRAHAMSON
DARLENE A. VORACHEK
ROBERTA A. LEVINSON
LORI L. DEEM

TELEPHONE (312) 263-2698
FACSIMILE (312) 419-6770
attorneys@avmlaw.com

April 21, 2008

CAROLINE E. RDZANEK

BY FAX (312) 845-1998

Peter A. Steinmeyer, Esq.
Epstein Becker & Green, P.C.
150 North Michigan Avenue, 35th Floor
Chicago, Illinois 60601-7553

Re: David Vogelgesang and Thomson West Publishing

Dear Mr. Steinmeyer:

On April 8, 2008, we notified the Thomson Corporation of claims arising from the termination of Mr. Vogelgesang. In our letter, we outlined Mr. Vogelgesang's concern that he was fired because of his involvement with the investigation and complaint about inappropriate business practices.

On April 17, we received Thomson's initial response, in which the Company raised allegations of misconduct by Mr. Vogelgesang subsequent to his termination. Although Thomson indicated that it had conducted an investigation, few specifics underlying its strong allegations of interference, defamation, etc. were provided. To the extent any detail was furnished, it is clear there are inaccurate assumptions being made. For example, Mr. Vogelgesang is not and has not been defaming Thomson, nor has he been telling companies that Thomson is "ripping them off," as the Company now alleges. While Mr. Vogelgesang is offering to assist companies in negotiating for legal research services, he has not been defaming any company, including Thomson. To the contrary, he may urge clients to use Thomson's services.



EXHIBIT
G

Thomson's actions since Mr. Vogelgesang raised his claims are troubling. The Company has castigated Mr. Vogelgesang for not returning property (when instructions to do so were never received).* Then, after that property was returned forthwith (see Caroline Rdzanek email dated April 18, 2008), Thomson began making unsupported accusations. One might view such a response as retaliatory.

We are happy to review any specific incidents or conversations that support Thomson's allegations. However, Thomson's demands that Mr. Vogelgesang take certain actions by specific dates are inappropriate. After all, he has been fired.

Nevertheless, in our last call, you indicated that Thomson would respond to Mr. Vogelgesang's claims later this week. We look forward to receipt of that response.

Very truly yours,

Darlene A. Vorachek

DAV:js
cc:   David Vogelgesang

---

*While Thomson provided a tracking statement, neither Mr. Vogelgesang nor his wife ever received the package referenced.

**From:** David Vogelgesang PPC [mailto:dvogelgesang@pricepointconsulting.com]
**Sent:** Thursday, March 20, 2008 2:30 PM
**To:** Casey O'Brien
**Subject:** How to lower your Westlaw or Findlaw bill

Casey,

I would like to reintroduce myself to you and the Firm, for the past 12 years I have been working with Thomson/West in both sales and management roles selling Westlaw to Law Firms similar to yours. I recently started a Consulting business to help firms lower their rates for on-line legal research services because your account will be coming up for renewal now may be a good time for us to meet regarding your on-line contract.

Please take a look at my Website and get back to me if you are interested if seeing if you are getting the best pricing for your firm. The web address is
www.pricepointconsulting.com

I look forward to hearing from you.

Respectfully,

David Vogelgesang
Price Point Consulting, LLC
330 416-6262



EXHIBIT
H